UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

GIRISH R. PUROHIT                                                                                      PLAINTIFF

V.                                                                     CIVIL ACTION NO. 3:14CV40 DPJ-FKB

CITY OF JACKSON, MISSISSIPPI                                                              DEFENDANT

ORDER

This employment-discrimination action is before the Court on motion of the City of Jackson for summary judgment [40] pursuant to Federal Rule of Civil Procedure 56. Plaintiff Girish R. Purohit has responded in opposition. The Court, having considered the submissions of the parties, along with the pertinent authorities, finds that Defendant's motion should be denied.

I.      Facts and Procedural History

Plaintiff Girish R. Purohit, an Asian male, born in India, and over the age of 40, filed this action against his former employer, the City of Jackson, for discrimination and retaliation based on race, sex, national origin, alienage, and age under Title VII, 42 U.S.C. § 1981 (through § 1983), and the Age Discrimination in Employment Act (ADEA).

Purohit began work with the City of Jackson in April 2009 as a Senior Planner in the Office of Housing and Community Development, working in the HOME program. Purohit Aff. [45-1] at 1. During most of his tenure, he reported to the manager of the HOME program, Leo Stevens. *Id.* Purohit's problems began on August 11, 2012, when Deputy Director Ivory Williams announced that Valerie Tucker, an African-American female under the age of 40, would be the new manager of the HOME program and become Purohit's supervisor. *Id.* Tucker previously served as the manager of the Neighborhood Stabilization Program and had no experience with the HOME program while working for the City. *Id.* According to Purohit, he

had run the HOME program for several years and previously expressed his interest in a management position to Stevens, if one became available. *Id.* at 2, 5. But the City never advertised the manager position it eventually gave to Tucker.

Purohit links his lack of promotion to an inability to attend specialized training relevant to the HOME program. Beginning in September 2012, he requested, and received approval from Stevens, to attend "HOME Certification Specialist—Administrative" training, which prepares participants to serve as managers of a HOME program. *Id.* at 2; Training Program List [45-4]. Instead, he was sent to "HOME Certified Specialist—Regulations" training, which prepares participants only for non-managerial positions. Purohit Aff. [45-1] at 2. Meanwhile, Tucker was purportedly allowed to attend the administrative-track training and obtain certification. Compl. [1] at 2. Purohit later learned that Tucker's completion of the administrative training and certification—training which he was allegedly denied—was cited as one of the reasons for placing her in the manager position. Purohit Aff. [45-1] at 3.[1]

In October 2012, Purohit filed an internal grievance, complaining of his exclusion from the administration training and from consideration for the manager position. First Grievance [45-6]. His supervisor, Stevens, agreed, stating "I agree with your desire to be able to attend HOME certification *administrator* training and to be considered for the proposed manager position." *Id.*

---

[1] Defendant frequently states that Purohit was allowed to attend "HOME Certification" training. *See, e.g.*, Def.'s Reply [48] at 5. But the City does not appear to directly address Purohit's evidence that there were different types of "HOME Certification" training and that he was denied an opportunity to attend the "administrative" training. Viewed in a light most favorable to Purohit, the Court must assume that such a distinction existed.

(emphasis added).[2] In this grievance, Purohit expressed concern that he was being denied training and advancement opportunities based on his age, gender, and race. Second Grievance [45-7] at 4 (dated October 15, 2012). On November 1, 2012, Purohit filed another grievance, complaining that his first grievance had gone unanswered. *Id.* at 1.

According to Purohit, things went downhill after he filed the grievances. Beginning in November 2012, he claims Tucker and Williams began nitpicking him—including snatching his notepad from him during a meeting, reprimanding him for being five minutes late to a meeting when others were 15 minutes late, and falsely claiming that he slammed his notepad on the desk during training. Purohit Aff. [45-1] at 2, 3. Purohit also testified that Williams made the comment, "You foreigners have money to travel," in response to a request for vacation leave, Purohit Dep. [40-2] at 9, a comment he perceived as a racial slight, *id.* Later, during the time Purohit was grieving his concerns, a message was allegedly delivered to Purohit on Williams's behalf in which Purohit was told, "You had better watch your body language and behavior before you don't have a job." Purohit Aff. [45-1] at 3.

On March 4, 2013, the City placed Purohit on administrative leave without pay, contending he had committed violations of the employee code of conduct. The following day, he filed a charge of discrimination with the Equal Employment Opportunity Commission. EEOC Charge [1-2]. He never returned to his job, and on July 18, 2013, the City formally terminated his employment.

---

[2] This evidence supports Purohit's claim that there were different types of HOME Certification training.

Purohit challenged that decision and the resulting denial of unemployment benefits before the Mississippi Department of Employment Security (MDES).  Following an October 22, 2013 hearing, the administrative law judge found that the City had failed to show Purohit had been terminated for misconduct, noting the City "did not issue any formal written warning or advise the claimant that his job was in jeopardy" as required by its progressive disciplinary policy.  Decision [45-15] at 2.

Finally, after receiving notice of his right to sue from the EEOC, Purohit filed this action seeking damages.  In his Complaint, Purohit contends his non-selection for manager, suspension, and termination were based on his race, age, sex, national origin, and alienage, and in retaliation for complaining about discrimination.  Compl. [1] at 4–6.  The case is now before the Court on the City's motion for summary judgment as to all claims.

II.      Summary Judgment Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The

nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

III.  Analysis

      A.  Discrimination

At the summary-judgment stage, employment-discrimination claims based on circumstantial evidence are examined using the familiar burden-shifting test announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). A plaintiff must first establish a prima facie case of discrimination, then the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its decision. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). Finally, the plaintiff must offer sufficient evidence to create a genuine issue of material fact "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)." *Id.* (internal quotation omitted).

While the parties agree that burden shifting is required, they diverge on the applicable elements of a prima facie case. According to the City, Tucker's appointment resulted from a reorganization of duties, rather than a decision to place Tucker in an available position. The City

therefore relies on the disparate-treatment framework for a prima facie case of discrimination, under which Plaintiff must show:  1) he was a member of a protected class; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) he received less favorable treatment than a similarly situated individual outside his protected group.  *See Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001).

Purohit takes a different tack, focusing on his non-selection for the manager position and arguing that the Court must apply the prima facie case for a failure-to-promote claim.  That approach requires proof that:  1) he belongs to a protected class; 2) he was qualified for the position sought; 3) he was not promoted; and 4) the position was filled by someone outside the protected class.  *See Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 468 (5th Cir. 2001).  The obvious difference between the two comes in the fourth element—whether Purohit must show better treatment for a similarly situated individual or that the position was filled from outside his protected class.  Under the former, he could not point to the dissimilarly situated Valerie Tucker; under the latter, he could.

In many respects, the parties' submissions on these points are like the proverbial ships passing in the night, arguing their positions based on different legal standards and leaving doubt whether issues were properly raised and answered.  But viewed in a light most favorable to the non-movant, the Court finds that the facts could support Purohit's claim that he was denied promotion.  To begin with, the City argues that the HOME Program duties were merely rolled into Tucker's already existing duties as part of a reorganization, stating that these "were personnel decisions made to stream line [sic] the office."  Def.'s Reply [48] at 6.  But all employment-discrimination claims relate to "personnel decisions" of some sort, and the fact

6

remains that Purohit expressed interest in this management position; it would have been a promotion for him; Stevens agreed that he should have been considered for "the proposed manager position," Grievance [45-6] at 1; and the position was held by Stevens before it was awarded to Tucker (though she had others as well). Defendant has not squarely addressed Plaintiff's evidence and has not adequately supported its contention that the failure-to-promote elements do not apply. On this record, the claim survives the prima-facie stage.[3]

B.      Retaliation

To establish a claim of retaliation, Purohit must show that: 1) he engaged in a protected activity; 2) an adverse employment action occurred; and 3) a causal link existed between the protected activity and the adverse employment action. *Roberson v. Alltell Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004). Defendant attacks Purohit's case on the first and second elements.

First, the City contends that Purohit never engaged in protected activity. It begins this argument with the obviously incorrect statement that the EEOC charge occurred after Purohit's termination. *See* Def.'s Mem. [42] at 16. In addition, the record evidence reflects that Purohit repeatedly grieved and complained about discrimination beginning in October 2012 through his ultimate termination from employment. *See Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996) (finding the plaintiffs had established that they engaged in protected activity by complaining internally).

The City suggests that these internal grievances do not count because Purohit lacked a

---

[3]The Court should note that burden shifting is a vehicle for evaluating summary judgment. It is not employed in the final jury instructions. *See Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 576 (5th Cir. 2004) ("This Court has consistently held that district courts should not frame jury instructions based upon the intricacies of McDonnell Douglas burden shifting analysis.").

reasonable belief that the conduct was discriminatory. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 349 (5th Cir. 2007) ("Because Turner could not have reasonably believed that Colston's conduct . . . constituted an unlawful employment practice under Title VII, this incident cannot give rise to protected activity."). But the City has not adequately addressed Purohit's evidence regarding the training and advancement he was allegedly denied. Under these circumstances, a question of fact exists as to the reasonableness of his complaints.

Second, the City claims Purohit cannot show he suffered an adverse employment action. An adverse employment action exists when the "employer's actions [are] harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). "[P]etty slights or minor annoyances that often take place at work and that all employees experience" are not sufficient. *Id.* at 68. Here, Purohit claims that "things got worse at work" after he complained, but he rightly "concedes [in his Response] that many of the acts of retaliation would not meet the materially adverse requirement . . . ." Pl.'s Mem. [47] at 12.

But, in the end, while not all of the actions that bothered Purohit would state a claim, he was placed on administrative leave for five months and then terminated from employment. The City has not suggested that these acts were not adverse—nor could it. Considering the record before the Court, Purohit's retaliation claim survives at the prima-facie stage.

    C.    Pretext

Even assuming the City could offer non-discriminatory reasons for Purohit's non-selection and termination, the parties part ways on the pretext issue. Having viewed the record as a whole in a light most favorable to Purohit, the Court finds a question of fact on this issue.

Purohit first denies the allegations forming the basis of the employment decisions. *See* Purohit Aff. [47-1] at 5. "Generally denying the alleged wrongdoing upon which the termination was based is not sufficient to rebut a defendant's reasons for terminating a plaintiff." *Stallworth v. Singing River Health Sys.*, No. 1:10CV123–HSO–JMR, 2011 WL 2532473, at *3 (S.D. Miss. June 24, 2011) (citations omitted). But as Purohit notes, it does not appear that the City provided a written warning that his employment was in jeopardy, and it further appears that the City failed to follow its own progressive discipline policy. These facts raise an "inference of pretext." *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 357 n.29 (5th Cir. 2005). The City did not offer a reply to this argument, and the Court concludes that its Motion for Summary Judgment should be denied.[4]

IV. Conclusion

Based on the foregoing, Defendant's motion for summary judgment [40] is denied.

**SO ORDERED AND ADJUDGED** this the 27th day of May, 2015.

                                        s/ *Daniel P. Jordan III*
                                        UNITED STATES DISTRICT JUDGE

---

[4] The Court also notes that the comments attributed to Deputy Director Ivory Williams could offer other evidence of pretext and animus. The City contends that her alleged statements should be disregarded because they fail the test for direct evidence. Def.'s Mem. [42] at 13–14 (noting, *inter alia*, that Williams could not hire or fire). But this argument falls short, at least at this stage, because the comments could still be considered stray remarks. *See Jackson v. Cal–W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010). When, as here, stray remarks "are not the only evidence of pretext, they are probative of discriminatory intent." *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577 (5th Cir. 2003). And that remains true even when "uttered by one other than the formal decision maker, provided that the individual is in a position to influence the decision." *Id.* at 578. Finally, the City never responded to Purohit's cat's paw argument. *See Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1191 (2011). And it has not addressed supervisory status under *Vance v. Ball State University*, 133 S. Ct. 2434, 2440 (2013).